Evans J.
delivered the opinion of the Court.
To make an effietual tender, the money, in general, must be produced; but where there is a refusal on the other side to receive it, it is not necessary to go through the idle ceremony of producing and counting it. It is not enough that the party expresses his willingness and readiness to pay. He must shew that he had the money, and the ability to do, what he offered to do. From these principles, it would seem there was, no sufficient tender in this case, and consequently if Stoney had a right to make a distress at all, the tender alleged was insufficient to make him a trespasser, even if no more was due than the rent which had accrued after the 6th February, when the supposed partition was made. The whole proceeding of the defendant, in shutting up the store, and levying on goods, which, according to his own appraisement, was of more than four times the amount of the rent due, was a very high-handed measure. All his subsequent proceedings were irregular, and not such as have any sanction, even w the extraordinary powers given by law, to the landlord, in coercing the payment of his rent. These irregularities were subsequent to the commencement of this suit, and on the trial this seemed to me an important *188 consideration. Some of my brethren are of opinion that was wholly immaterial, and if the reason why an act lawful in itself be, (as I suppose) that the subsequent illegal conduct of the party shows the motive and the object, with which he did that which seemingly was lawful, and that the exercise of the legal right was a mere cover or pretext to do an injury to the plaintiff, then I should think it was not very material, whether such illegal acts preceded or succeeded the bringing of the suit. But as it is not intended to put this case on that ground, I propose to do no more than to allude to it, in order that the silence of this Court may not be understood as a concurrence in the proposition laid down on the circuit. The ground upon which the case is put in this Court, is, that Stoney had no such title to the house and lot, as authorized him to levy a distress for the rent, which accrued either before or after the supposed partition was made.
There was no contract between Thompson and Stoney in relation to the rent. Thompson had entered originally as a tenant of the cider Reid, and after his death he was the tenant of those to whom the land belonged, or of whomsoever the power of leasing and collecting the rents, was devolved by law. If the estate of Reid had been divided by a Court of competent jurisdiction, or by the acts of the parties, so as to vest this house and lot in Stoney and wife, this would have been such an assignment of the estate as would have vested the reversion after the lease expired, as well as a right to all the rents, which should afterwards fall due. But in this case there were no release executed by the others to Stoney and wife, so as to vest the legal estate in them, and the Court of Equity, which alone could make a valid partition during the minority of Mrs. Stoney, had refused to confirm the informal partition which had been made. The effect of this was to leave the matter precisely as it stood before the partition. What was done was ineffectual to transfer the legal estate to Stoney; and without the legal estate he could not distrain for rent clue by one, who did not enter under him, and wfiro was in no way liable to him, unless the estate of the original landlord had been assigned to him. We think, therefore, that *189 Stoney had no right to distrain under any title, which he derived to the premises, from the partition which was attempted to be made. The next question is, whether he had any right, derived from any other title to distrain, as he did, for the rents in this case upon the goods of Reid, the plaintiff. If he had any such right, it must be derived from the will of Samuel Reid. By that, after a bequest of several legacies and annuities, the testator directs as follows, viz: “the rest and remainder of my estate, I wish to remain undivided during the natural life of my wife Eliza M. Reid, and at her death to be equally divided between my son, Samuel Paine Reid, and my daughter, Mary Clara Reid, share and share alike, to them and their heirs forever. And during the life of the said Eliza M. Reid, the income to be divided equally between her, my son Samuel, and my daughter Mary, share and share alike.” Of this will [^appointed his wife executrix, and his son Samuel Reid, and Daniel Heyward, executors; the two first named proved the will, and qualified as executrix and executor. During the life of the wife, the income of the estate was to be divided between her and the two children, and no estate is given expressly to the children during that time. On her death, it was to be divided in fee between the two children. But in the mean time, in whom did the legal estate vest? Did it vest presently in the children, with the right of exclusive enjoyment postponed to the death of the wife? or did the legal estate vest in the heirs at law until the time of partition, in analogy to the case, where executors have the power to sell? or did it vest in those to whom the profits are given during the life of the wife? In the view taken by the Court, it is unnecessary to decide these questions. A will is to be construed liberally, so as to carry into effect the intention of the testator; and the question naturally arises, by whom did he intend that the estate, thus divided, should be managed; in the meantime, who was to lease his houses and lands, to receive the rents, and divide it in pursuance of the will? The answer to this question, it seems to me, is, that the duty belonged to the executors as such, and to the execution of this power, it is not necessary that the legal estate should be in them. It is the execution of a trust vested in them *190 by the testator, and the law invests them with whatsoever is necessary to execute the trust. It follows from the construction of the will, that Stoney, until the time for partition had arrived, had no right either to lease these premises, or to collect by distress or otherwise, the rents which were due by Thompson, and therefore it is unnecessary to say any thing on the question, which was much discussed, as to the right oí one joint-tenant or tenants in common to distrain for the whole, or his part of the rent. But even admitting that, as a co-tenant, he had a right of distress, it would be a most extraordinary doctrine, that he could distrain the goods of his co-tenant for the rent due to them both; for in this case it must be remembered, that Thompson, before the distress, had sold the goods to Reid in payment of a bona fide debt. The defendant put himself on his legal rights, and if this fail him, he must abide by the verdict of the jury, on the subject of damages. This Court does not see any thing in the law, or facts of the case, to authorize its interference, and the motion is dismissed.